UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARIA LUGO,**

    **Plaintiff,**

v.     CASE NO. 8:05-CV-2099-T-EAJ

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

    **Defendant.**
_____/

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under the Act.[2] (T 15-21, 38-40)

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 14).

Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (internal citation omitted).[3]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed an application for SSI and DIB on July 30, 2003, claiming an onset of disability beginning July 17, 2003. (T 38-40) Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision issued on August 30, 2005. (T 15-21, 42, 47) The Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 4-6)

The ALJ found that Plaintiff was not eligible for SSI or DIB because she was not disabled at any time through the ALJ's decision on August 30, 2005. (T 21) Plaintiff filed a timely petition

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before September 30, 1981.

for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff, forty-six years old at the time of the hearing on May 19, 2005, has a high school general equivalency degree. (T 237, 240) Plaintiff moved to the mainland United States from Puerto Rico in 1986. (T 240) She cannot read or write English and speaks only Spanish. (T 242) At the hearing before the ALJ, she was assisted by an interpreter, and a family member helped her complete her benefits' applications. (T 233, 241-42)

Plaintiff has previously worked packing shrimp, cleaning a nursing home, polishing doorknobs at a brass factory, and sewing on clothing tags at a clothing factory. (T 244-47) She asserts that a combination of impairments including arthritis and constant pain have rendered her unable to work since July 17, 2003. (T 38, 46) The ALJ determined that Plaintiff has not engaged in any substantial gainful activity since her alleged onset date. (T 17)

Following the administrative hearing, the ALJ found that Plaintiff suffers from the severe impairments of osteoarthritis and obesity; however, the ALJ concluded that Plaintiff's impairments or combination of impairments do not meet or medically equal an impairment listed in the Listing of Impairments found in Appendix 1, Subpart P of Regulations No. 4. (T 17-18) In addition, the ALJ found that Plaintiff has osteoporosis, hypercholesterolemia, depression, and post-traumatic stress disorder ("PTSD"), which the ALJ determined to be medically-determinable, non-severe impairments. (Id.) The ALJ also found that Plaintiff's complaints of chest pain did not constitute a medically-determinable impairment. (T 18)

The ALJ held that Plaintiff has no past relevant work but concluded that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work with the following limitations:

". . . work which involves frequent lifting of up to ten pounds and occasionally lifting of up to twenty pounds; . . . sit[ting] for a total of six hours in an eight-hour workday; [and] stand[ing] and walk[ing] for up to one-half hour at a time for a total of six hours in an eight-hour workday."[4] (T 18, 20)

Relying on the testimony of a vocational expert ("VE") in response to hypothetical questions which incorporated these limitations, the ALJ concluded that Plaintiff could perform jobs such as parking lot cashier, toll collector, and cafeteria attendant. (T 21) In reaching the conclusion that Plaintiff had not been under a disability as defined by the Act at any time through the date of his decision, the ALJ held that Plaintiff's statements regarding her limitations were not wholly credible. (T 19)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff alleges the Commissioner: (1) incorrectly applied the pain standard; (2) failed to properly weigh the opinion of Plaintiff's treating physicians; (3) did not base the RFC determination on substantial evidence; (4) incorrectly assessed Plaintiff's mental limitations; and (5) incorrectly held that Plaintiff's impairments to not meet Listing 14.09 (Dkt. 20 at 1).

---

[4] Light work, defined at 20 C.F.R. §§ 404.1567(b), 416.967(b), involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds. The regulations further provide: "Even though the weight lifted may be very little, a job fits this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

**A.** The court will first consider whether Plaintiff meets the requirements of 20 C.F.R., Part 404, Subpart P, Appendix 1, § 14.09(a), regarding inflammatory arthritis.[5] Plaintiff contends that the ALJ's conclusion that Plaintiff's arthritis does not meet the requirements of a listed impairment is flawed because it does not take into account the opinion of Plaintiff's treating physician, Fiordaliza Toribio, M.D. ("Dr. Toribio"). The ALJ does not specifically discuss Listing 14.09 in his opinion but concludes in general that Plaintiff does not suffer from a listed impairment. (T 18)

In determining whether a plaintiff's condition meets or equals a listed impairment, it is the plaintiff's burden to produce all medical evidence and findings necessary to make this determination. Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525-.1526). Not only does Plaintiff fail to meet this burden, Plaintiff's brief argument on this topic includes no record or case law citations.

Dr. Toribio examined Plaintiff once, in February 2004, and completed an RFC assessment of Plaintiff three months later, in May 2004. (T 160-64) In her assessment, Dr. Toribio concluded that Plaintiff has joint deformity and osteoarthritis. (Id.) Dr. Toribio imposed significant restrictions on Plaintiff, opining that she would have difficulty with repetitive handling or fingering and would only be able to use her hands to grasp, turn, and twist objects ten percent of the time during an eight-hour workday. (T 164) In addition, Dr. Toribio concluded that Plaintiff could only stand for forty-

---

[5] The regulations define "inflammatory arthritis" as including "a vast array of disorders that differ in cause, course, and outcome. . . . Inflammatory arthritis of peripheral joints [ ] comprises many disorders, including rheumatoid arthritis . . . Clinically, inflammation of major joints may be the dominant problem causing difficulties with ambulation or fine and gross movements." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 14.00(B)(6). A claimant meets Listing 14.09 when she has: "[A] [h]istory of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in an inability to ambulate effectively or inability to perform fine and gross movements effectively. . ." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 14.09(A).

five minutes at a time and must elevate her legs when sitting. (T 162-63)

The ALJ gave Dr. Toribio's findings "little weight"; elsewhere in the ALJ's opinion, he concluded that Plaintiff does not have a listed impairment. (T 18, 20) Whether the ALJ's decision to discount Dr. Toribio's opinion is supported by substantial evidence is the topic of the next subsection. For purposes of the listings issue, the court notes that the ALJ observed the three-month passage of time between Dr. Toribio's examination of Plaintiff and the completion of the RFC assessment. (T 20) The ALJ also emphasized that Dr. Toribio is a family practitioner, not an expert in the field of rheumatology. (Id.) Further, the ALJ cites medical evidence in the record that contradicts Dr. Toribio's findings:

> Despite the claimant's complaints of arthritis and diffuse joint pain, during a consultative examination on January 5, 2004, the claimant displayed no evidence of arthritis, inflammation, heat, or tenderness in any joint. [ ] Furthermore, the claimant displayed full range of motion in the cervical spine, lumbar spin, shoulders, elbows, wrists, hands, hips, knees, ankles, and toes. [ ] X-rays of the claimant's lumbrosacral spine were normal and revealed no degenerative disc disease. [ ] Moreover, although the claimant testified that she has Rheumatoid arthritis, this assertion is not borne out by the record. It is true that the claimant has slightly abnormal levels of ANA and Rheumatoid factor, the treating physician opined that she probably does not have Rheumatoid arthritis. [ ] I also note that the claimant denied any joint or back pain when examined in May, 2003. [ ]

(T 19)

Other than referencing Dr. Toribio's findings, Plaintiff offers no evidence that she meets the requirements of Listing 14.09. As will be discussed, the ALJ had good cause to reject Dr. Torbio's findings regarding osteoarthritis and joint pain. Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff does not meet the requirements of a listed impairment.

**B.** The next issue is whether the ALJ improperly rejected the opinions of Plaintiff's treating physicians concerning her arthritis.

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions.[6] Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the ALJ may reject the opinion of a treating physician if it is conclusory, contrary to the evidence, or unsubstantiated by any objective medical evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983); accord Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987). It is reversible error for the ALJ to ignore or fail to refute a treating physician's testimony. See MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding that the Commissioner accepted opinions of the claimant's treating physicians as true when he made no finding as to the weight of their testimony and failed to discredit it).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supporting medical evidence; (4) the consistency with the record as a whole; (5) whether the physician specializes in the medical issues; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

As mentioned above, the ALJ considered Dr. Toribio's opinions and gave them little weight. The ALJ observed that Dr. Toribio placed significant restrictions on Plaintiff's activities due to arthritis. (T 19) The ALJ then pointed to several aspects of Dr. Toribio's opinion which were questionable. For instance, the ALJ highlighted the fact that Dr. Toribio examined Plaintiff only once and completed an RFC evaluation of Plaintiff three months later. (T 19-20, 160-64) The ALJ

---

[6] A treating physician's opinion will be accorded controlling weight if it is supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

7

noted that Dr. Toribio is not a specialist but a general practitioner and that consultative examiner Morris Kutner, M.D. ("Dr. Kutner") examined Plaintiff in January 2005 and found that there was "no evidence of any arthritis, inflammation, heat, or tenderness in any joint." (T 19)  Other evidence contradicting Dr. Toribio's findings includes Plaintiff's testimony that she cooks, cleans her small kitchen, shops for groceries, and babysits her four young grandchildren. (T 19, 238-39) Also, non-examining state agency physician Robert Whittier, M.D. ("Mr. Whittier") determined that Plaintiff had no exertional limitations. (T 184)

Plaintiff points to her elevated Rheumatoid factor as undercutting the ALJ's rejection of Dr. Toribio's opinion and substantiating a diagnosis of rheumatoid arthritis.  January 2005 lab results for Plaintiff indicate elevated levels of Antinuclear Antibodies ("ANA") and a Rheumatoid factor of 21 IU/mL. (T 219)  Dr. Toribio, who treated Plaintiff in the early part of 2004, did not have the benefit of these results when making her RFC assessment.

In March 2005, however, one of Plaintiff's treating physicians at Lakeland Volunteers in Medicine with access to these lab results concluded that Plaintiff probably does not have rheumatoid arthritis. (T 210) Although Plaintiff cites to February 2005 appointment notes of a Lakeland Volunteers in Medicine physician as suggesting a diagnosis of rheumatoid arthritis (T 211), these treatment notes instead indicate that the doctor was questioning whether Plaintiff had rheumatoid arthritis, not diagnosing it.  In any event, the ALJ's characterization of a  Rheumatoid factor of 21 as "slightly abnormal" (T 19) is borne out by medical textbooks; further, a diagnosis of rheumatoid arthritis is based on multiple factors, not just the Rheumatoid factor. [7] The same can be said of the

---

[7]  See The Merck Manual, 416-23 (Mark H. Beers, M.D. et al. eds., 17th ed. 1999). Further, the American College of Rheumatology has established a criteria for the diagnosis of rheumatoid arthritis which involves the presence of five of seven symptoms; a positive Rheumatoid Factor test

"slightly abnormal" ANA factor noted by the ALJ. (Id.) Finally, even if Plaintiff does have rheumatoid arthritis, this fact alone does not establish that the condition interfered with Plaintiff's ability to work for any consecutive twelve-month period. See generally McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

For the reasons stated above, substantial evidence supports the ALJ's decision to discount Dr. Toribio's opinion; Plaintiff has failed to show that the ALJ's consideration of Dr. Toribio's opinion was error.

**C.** Next, the court considers Plaintiff's argument that the ALJ did not properly evaluate her mental impairments (Dkt. 20 at 10). Plaintiff claims that the ALJ should have determined that her mental impairments are severe based on the diagnosis of PTSD and major depression in 2004 and 2005. (T 193, 195, 198, 200) Plaintiff also contends that the consultative examiner's report cited by the ALJ is internally inconsistent (Dkt. 20 at 10).

At step two of the five-step evaluation process, the ALJ determines whether a claimant has a "severe impairment" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii). This step "acts as a filter" and the finding of any severe impairment or any combination of impairments that together qualify as severe at this step allows the ALJ to continue the disability analysis. Jamison, 814 F.2d at 588. As noted above, the ALJ found Plaintiff's osteoarthritis and obesity to be severe impairments, but concluded that her mental impairments were not severe. (T 17-18)

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v.

---

is one symptom. Attorneys' Textbook of Medicine, Vol. 5 § 19.22 (Roscoe N. Gray, M.D. et al. eds. 3rd ed. 2006).

Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (internal citation omitted).  It is not for this court to re-weigh the evidence; as long as there is substantial evidence to support the Commissioner's decision it must be affirmed.  Parker v. Bowen, 788 F.2d 1512, 1521-22 (11th Cir. 1986) (en banc).

Contrary to Plaintiff's assertions, the ALJ did not disregard the opinion of Plaintiff's treating physician in favor of that of a consultative examiner.  The ALJ discussed Plaintiff's diagnosis of PTSD and major depression and Plaintiff's testimony that she feels uncomfortable in crowds. (T 17) According to the medical records cited by the ALJ, Plaintiff was examined by a clinician and a physician at the Peace River Center (a mental health organization) on March 15, 2005, November 4, 2004, and September 16, 2004, and diagnosed with PTSD and major depression. (T 193, 195, 197).  Plaintiff was assessed with a Global Assessment Functioning ("GAF") score of 65-70.[8] (T 193, 195, 198)  The ALJ recounted Plaintiff's GAF score and then pointed to the opinion of Stacey McLaughlin, Ph.D. ("Dr. McLaughlin"), who evaluated Plaintiff on July 15, 2004 (prior to Plaintiff's examinations at the Peace River Center). (T 18, 165-69)  Dr. McLaughlin found that Plaintiff did not meet any of the criteria for an Axis I or an Axis II diagnosis. (T 168)  Specifically, Dr. McLaughlin concluded: "[Plaintiff] does appear to have some symptoms of depression and anxiety, but none are significant to warrant an individual diagnosis. . . . [Plaintiff] does not appear to have mental health symptoms which would interfere with her ability to maintain some type of part or full-time employment." (T 168-69) Based on this evidence and evidence of Plaintiff's daily

---

[8] A GAF of 65-70 corresponds to "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well. . . ." Diagnostic and Statistical manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR) p. 34.

activities, the ALJ concluded that Plaintiff does not have a severe mental impairment.[9] (T 18)

Additionally, Plaintiff informed Dr. McLaughlin that she was capable of managing her self-care independently, including cooking, cleaning, and shopping. (T 167) Dr. McLaughlin moted that she is capable of driving (Id.)  And the ALJ also considered the non-medical evidence that Plaintiff "pays the couple's bills by purchasing a money order . . . shops for groceries at a Spanish market twice weekly . . . mops a 'very small' kitchen and prepares meals." (T 19)  The ALJ noted that Plaintiff sometimes babysits her four young grandchildren. (Id.)  Although the ability to engage in everyday activities of short duration such as housework does not disqualify a claimant from receiving disability benefits, the ALJ may properly consider such evidence.  See, e.g., Markham v. Califano, 601 F.2d 533, 534 (10th Cir. 1979).

Without elaboration, Plaintiff also asserts that Dr. McLaughlin's report is internally inconsistent (Dkt. 20 at 10).  Dr. McLaughlin did recommend a state-appointed payee to manage Plaintiff's funds; however, the evidence strongly suggests that Dr. McLaughlin recommended this because Plaintiff cannot speak English.  Although Plaintiff scored poorly on the Wechsler Memory Scale-Third Edition test for memory functioning, Dr. McLaughlin emphasized that Plaintiff's low scores were due to the fact that she does not speak English and her interpreter during the exam, her brother, was unable to translate all of Dr. McLaughlin's questions.[10] (T 168)  According to Dr.

---

[9] Plaintiff was assessed with a GAF of 50 during her initial interview with a Peace River Center mental health practitioner on August 25, 2004. (T 200)  However, during her next visit on September 16, 2004, a psychiatrist assessed her GAF as 65, and during her follow-up visits to Peace River Center, Plaintiff's GAF was assessed as 65 and 70. (T 193, 195, 198)

[10] Dr. McLaughlin states: "Ms. Lugo received these particular scores on the Wechsler Memory Scale-Third Edition because she was unable to answer any items due to the fact that she does not speak English, and this examiner does not speak Spanish, and this exam is written in English.  When Ms. Lugo answered questions tapping into her short and long-term memory

McLaughlin, Plaintiff "has more than adequate daily memory functioning to meet her daily needs." (Id.) Moreover, as noted above, Plaintiff testified before the ALJ that she is capable of managing her household's funds. (T 248)

Finally, the evaluation of the state agency psychological consultant also supports the ALJ's conclusions that Plaintiff does not suffer from severe mental impairments. Psychological consultant Bruce Hertz, Ph.D. ("Dr. Hertz") reviewed Plaintiff's medical records on July 26, 2004, and noted that Plaintiff did not have a medically determinable mental impairment. (T 170) The ALJ may properly consider this evidence.

For the reasons stated above, the ALJ's evaluation of Plaintiff's mental impairments as non-severe is supported by substantial evidence.

**D.**  The fourth issue is whether the Commissioner correctly applied the pain standard in evaluating Plaintiff's subjective complaints of pain.

The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) that the medical evidence substantiates the severity of the pain from the condition, or (3) that the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986). This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

---

biographically, she did not have any difficulty recalling any information." (T 168)

After evaluating the medical evidence and Plaintiff's testimony, the ALJ concluded in his findings that "claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (T 19) Plaintiff argues that this finding is in error because the ALJ did not properly consider medical evidence that indicates Plaintiff suffers from rheumatoid arthritis (Dkt. 20 at 6).

Although the ALJ did not expressly cite to the applicable pain standard, his findings and discussion indicate that the ALJ was aware of and applied the proper standard.  See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).  The ALJ considered, and then discounted, Plaintiff's complaints of diffuse joint pain.  The ALJ noted Dr. Kutner's January 2004 examination of Plaintiff during which Plaintiff displayed no evidence of arthritis, inflammation, heat, or tenderness in any joint. (T 19)  The ALJ characterized Plaintiff's levels of ANA and Rheumatoid Factor as "slightly abnormal", which comports with Plaintiff's treating physician's opinion that she does not have rheumatoid arthritis. (Id.)   Significantly, there is no evidence in the record of a diagnosis of rheumatoid arthritis.  Although Dr. Toribio diagnosed Plaintiff with osteoarthritis, the ALJ properly discounted this opinion, as discussed above.  Additionally, the ALJ recognized limitations on Plaintiff's physical ability to do basic work activities by reducing her standing and walking to no more than thirty minutes at a time. (T 19)

The ALJ's discussion of his reasons for rejecting Plaintiff's pain testimony was "enough to enable [the court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole," including the diffuse joint pain she experienced, and therefore, the ALJ's summary regarding Plaintiff's credibility was not in error.  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (internal quotation marks and citation omitted).

13

**E.**  The final issue is whether the ALJ's determination of Plaintiff's RFC is based on substantial evidence.  Plaintiff contends that the hypothetical question posed to the VE was in error because it did not include any limitations relating to Plaintiff's mental impairments (Dkt. 20 at 9).

The ALJ made the following RFC determination:

> . . . the claimant has the residual functional capacity to perform a full range of light work or work which involves frequent lifting of up to ten pounds and occasionally lifting of up to twenty pounds; the claimant can sit for a total of six hours in an eight-hour workday; the claimant can stand and walk for up to one-half hour at a time for a total of six hours in an eight-hour workday.

(T 18)

Residual functional capacity is a medical determination to be made by the ALJ.  See generally 20 C.F.R. §§ 404.1545, 404.1546.  In formulating the RFC, the ALJ is not bound by any specific medical opinion.  20 C.F.R. § 404.1527(d).  However, the ALJ is required to consider all medically determinable impairments in assessing the RFC.  20 C.F.R. §§ 404.1545, 416.945.  As discussed above, the ALJ's consideration of Plaintiff's mental impairments was proper. (T 17-18)  Therefore, substantial evidence supports the ALJ's RFC determination.

## III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for SSI and DIB is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED**:

(1)   the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)   the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. § 405(g).

**DONE AND ORDERED** in Tampa, Florida this 29th day of March, 2007.

_____
ELIZABETH A JENKINS
United States Magistrate Judge